**No. 25-2166**

**In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

SAMANTHA HALLMAN,

    *Plaintiff-Appellant*,

TRAVIS REEDS, *et al*.,

    *Defendants-Appellees*.

**On Appeal from the United States District Court
for the Eastern District of Michigan, Southern Division
Case No. 25-10939- Honorable Brandy R. McMillion**

_____

**CORRECTED BRIEF OF APPELLEES**

**ORAL ARGUMENT REQUESTED**

_____

William H. Horton (P31567)
John R. Fleming (P79748)
GIARMARCO, MULLINS & HORTON, P.C.
Tenth Floor Columbia Center
101 West Big Beaver Road
Troy, Michigan 48084-5280
(248) 457-7000

*Attorneys for Defendant/Appellee County of Oakland*

i

## CORPORATE DISCLOSURE

No corporation has a substantial financial interest in the outcome of this litigation.

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ................................................................................ iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT ....................................... vi

STATEMENT OF JURISDICTION................................................................... vii

STATEMENT OF THE ISSUES.........................................................................1

STATEMENT OF THE CASE .............................................................................2

SUMMARY OF THE ARGUMENT ....................................................................7

ARGUMENT .......................................................................................................8

REQUESTED RELIEF.......................................................................................22

CERTIFICATE OF SERVICE ...........................................................................23

# <u>TABLE OF AUTHORITIES</u>

Page No.

**Cases**

*AFT Michigan v. Project Veritas*, No. CV 17-13292, 2023 WL 2890152, at *4 (E.D. Mich. Apr. 10, 2023)..................................................................20

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) .........8

*Bradford v. Johnson*, 354 F. Supp. 1331, 1337 (E.D. Mich. 1972)........................19

*Com. v. Winfield*, 464 Mass. 672, 677-78 (2013) ............................................. 15, 18

*Fisher v. King*, 232 F.3d 391, 396 (4th Cir. 2000) ......................................................16

*Fox v. Makin*, 2024 WL 5046224, at *6 (D. Me. Dec. 9, 2024)..............................20

*Globe Newspapers v. Superior Court,* 457 U.S. 596 (1982) .....................................9

*In re Sony BMG Music Entertainment*, 564 F.3d 1, 9 (1st Cir. 2009).....................15

*Kilnapp v. City of Cleveland*, 167 F.4th 909, 928 (6th Cir. 2026)............................8

*Kohls v. Ellison*, 2025 WL 66765, at *1 (D. Minn. Jan. 10, 2025) ........................20

*Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) ..............................................16

*Mirlis v. Greer*, 952 F.3d 51 (2d Cir. 2020) ...........................................................17

*Nixon v. Warner Communications*, 435 U.S. 589, 610 (1978)......................... 12, 20

*Pereida v. Wilkinson*, 592 U.S. 224, 241 (2021) ....................................................17

*Perez v. Aetna Life Ins Co*, 150 F.3d 550, 554 (6th Cir. 1998) ................................8

*Press-Enterprise Co v Superior Court*, 478 U.S. 1, 5 (1986)..................................5

*Press-Enterprise Co v. Superior Court of California*, 478 U.S. 1 (1986) (*Press-Enterprise II*) ..............................................................................................9, 17

*Press-Enterprise Co v. Superior Court*, 464 U.S. 501, 503 (1984)........................9

*Richmond Newspapers, Inc v Virginia*, 448 U.S. 555, 560 (1980) .........................9

*Somberg v. Cooper*, 582 F. Supp. 3d 438, 446 (E.D. Mich. 2022) ........................21

*Stevens v. Michigan State Court Administrative Office*, 2022 WL 3500193 (6th Cir. Aug. 18, 2022)..........................................................................................9

*United States v. Beckham*, 789 F.2d 401, 409 (6th Cir. 1986) ...............................15

*United States v. Bruno*, 700 F. Supp. 2d 175, 182 (N.D.N.Y. 2010) ......................19

*United States v. McDougal*, 103 F.3d 651, 659 (8th Cir. 1996)..............................15

*Westmoreland v. Columbia Broad.  Sys.  Inc*., 752 F.2d 16, 23 (2nd Cir. 1984)....15

**Statutes**

42 U.S.C. §1983 ...................................................................................................4

**Other Authorities**

https://www.congress.gov/bill/118th-congress/senate-bill/833...............................14

https://www.congress.gov/bill/119th-congress/senate-bill/1133.............................14

Lockerbie Victims Access Act, Public Law 118-37................................................13

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................................1,8

Fed. R. Civ. P. 8(a)(2)...........................................................................................8

M.C.R. 8.119(H)(8)................................................................................................3

M.C.R. 8.119(H)(8)(b)............................................................................................9

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

If the Court believes oral argument will assist in resolving this appeal, Appellees request oral argument.

## <u>STATEMENT OF JURISDICTION</u>

Appellees do not contest jurisdiction.  Appellant properly appealed a final judgment of the District Court.

## STATEMENT OF THE ISSUES

Appellant sought access to and copies of audio and video recordings of court proceedings from a Michigan district court and circuit court. The requests were denied pursuant to a Michigan Supreme Court rule requiring trial courts to enter an administrative order adopting a policy regarding access to and copying of court recordings from a list of permissible choices. The district court had entered an administrative order which does not allow access to or copying of such recordings. The circuit court had entered an administrative order allowing the viewing of such recordings but not copying. Appellant claims she has a First Amendment right to both access and copying. The District Court dismissed, holding the Michigan Supreme Court rule and the trial court administrative orders do not implicate the First Amendment.

1. Did the District Court err in deciding the motion under Fed. R. Civ. P. 12(b)(6) and should this Court review that issue since it was not raised or decided in the District Court?

    Appellant says "yes."

    Appellee says "no."

    The issue was not raised or decided in the District Court.

2. Did the District Court err in holding there is no constitutional right to access or copy recordings of trial court proceedings?

    Appellant says "yes."

    Appellee says "no."

    District Court said "no."

## STATEMENT OF THE CASE

In 2018, Appellant's brother, Richard Hallman, pled guilty in the 52-3 (Michigan) District Court to a misdemeanor offense of possession of marijuana. Compl., R.1, Page ID #11, ¶24. His plea was held in abeyance pending his completion of substance abuse counseling. When Richard's counselor failed to provide the Court with evidence that he had attended counseling, the Court properly issued a probation violation notice. *Id.*, ¶¶24-25. At the hearing for the violation, Appellant alleges Judge Asadoorian was rude to Richard and would not let him show texts or emails between him and the counselor. Ultimately, Richard pled guilty to the violation, his deferred sentence was revoked, and his guilty plea was entered. *Id.*, Page ID #12, ¶¶26-27. An official transcript of the hearing was produced. Richard did not appeal.

Thereafter, Appellant hired a lawyer for Richard to sue the counselor in Oakland County Circuit Court. In that case, Richard issued a subpoena to the District Court to obtain the audio recording of the probation violation hearing. The District Court moved to quash the subpoena based on the District Court's Local Administrative Order. The Circuit Court granted the motion. *Id.*, Page ID #13-14, ¶¶29-30. That order was not appealed. The case was subsequently settled. *Id.*, Page

ID #14-15, ¶¶32-33.[1]

Later, on April 4, 2022, Appellant emailed Judge Asadoorian, requesting a copy of the video and audio recording of Richard's probation violation hearing. Judge Asadoorian did not respond. Instead, the District Court Administrator emailed Appellant, stating 1) there is no video recording of the hearing, and 2) the audio recording is not a public record pursuant to the Local Administrative Order, which she attached. Compl., R.1, Page ID #16, ¶¶36-37; R.1-3, Page ID #59-61.

The Local Administrative Order is clear. Paragraphs 7 and 8 state:

> 7. <u>Access to court recordings</u>, log notes, jury seating charges, and other media of court proceedings made pursuant to M.C.R. 8.108 <u>is not permitted</u>.
>
> 8. <u>Copies of court recordings</u>, log notes, jury seating charges, and other media of court proceedings made pursuant to M.C.R. 8.108 <u>are not available</u>.

Defs.' Mot. Dismiss, R. 15-3, Page ID #188-191 (emphasis added).[2]

Also on April 4, 2022, Appellant sought to obtain the video recording of the Circuit Court hearing on the District Court's motion to quash the subpoena. The Court's Data Technology Unit gave Appellant a link, which expired in 72 hours, to

---

[1] Although commonly referred to as Oakland County Circuit Court, the official name of the Court is the Sixth Judicial Circuit Court.

[2] The LAO is required to be established pursuant to M.C.R. 8.119(H)(8): "Every court shall adopt an administrative order … to establish a policy for whether to provide access for records defined in subrule (F) and if access is to be provided, outline the procedure for accessing those records."

3

view (not copy) the video.  Compl., R.1, Page ID #17, ¶40.  She then emailed Judge Phyllis McMillen of the Circuit Court seeking a copy of the video recording which she stated she intended to modify and publish.  Compl., R.1-4, Page ID #63.  Judge McMillen denied the request pursuant to the Circuit Court Local Administrative Order.  *See* Defs.' Mot.  Dismiss, R. 15-4, Page ID #193-197.

Also in 2022, Appellant, as a political activist, sought video recordings of other Oakland Circuit Court judges who were up for reelection, and she was permitted to view them.  Compl., R.1, Page ID #20, ¶46.  She was given a room at the courthouse to view video recordings from every judge running for re-election in Oakland Circuit.  *Id*., Page ID #21, ¶48.  Appellant asserts she wanted to obtain recordings of judges so she could publicize them and inform voters about the candidates.  *Id*., Page ID #25, ¶¶58-59.

Prior to filing this lawsuit, Appellant has advocated for the release of court recordings before the Oakland County Board of Commissioners, *id*., Page ID #22, ¶51, been interviewed by the Detroit Free Press, *id*., ¶52, advocated to the Oakland County Circuit Court, *id*., Page ID #23, ¶53, written to state legislators, sought the support of the State Bar of Michigan and testified at a public administrative hearing before the Michigan Supreme Court, *id*. ¶54.  To date she has been unable to effect change in the policy on public access to the recordings she seeks.

Instead, she filed a lawsuit under 42 U.S.C. §1983, claiming the Michigan

4

district court LAO prohibiting access to and copying of court recordings violates the First Amendment, *id*., Page ID #34, ¶77, and that "a presumption" that the Michigan circuit court videos "may not be copied and disseminated" constitutes a prior restraint. *Id*., Page ID #36, ¶83.

The District Court dismissed the case for failure to state a claim. Order Grant. Mot. Dismiss, R. 21. Applying the "experience and logic" test of *Press-Enterprise Co v. Superior Court of California*, 478 U.S. 1 (1986) (*Press-Enterprise II*), the District Court held as follows:

> Despite citing to *Stevens*, Plaintiff repeats the same mistake the Sixth Circuit found in that case—a failure to provide a helpful historical record through which the Court can evaluate the "experience" prong of the test. *Stevens*, 2021 WL 5364814, at *6. Instead, Plaintiff provides an extensive historical breakdown underscoring the context from which the right to access the courts derives. ECF No. 18, PageID.247-51. But as Defendants correctly point out, this "is not a case about access to a trial or hearing," nor has Plaintiff asserted anything to the contrary. ECF No. 15, PageID.141. Plaintiff does not allege she has been denied access to attend court proceedings at the District Court or Circuit Court. Rather, her position is that history "strongly supports the existence of an *evolving* […] practice of expecting courts to make available to the public information that it allows the public to observe." ECF No. 18, PageID.250 (emphasis added). In other words, Plaintiff asks the Court to extend the law such that it should equate "public access" to courts with "technologically feasible" accessibility to "what actually happens in courts," such as access to recordings of proceedings. ECF No. 18, PageID.250. The Court declines to take such a leap just to reach Plaintiff's desired outcome.

5

Opinion at 9-10 (italics in original).

It should be noted that Appellant's inappropriate reference to suspended and now retired Judge Kathleen Ryan misstates that Judge Ryan was a judge of the same court as Appellees Reed and Asadoorian. She was not. She was an Oakland County Probate Court judge.

## SUMMARY OF THE ARGUMENT

The First Amendment to the Constitution does not provide a right of access to or copying of the recordings at issue. There is no history of "experience" of such access nor does "logic" require it. Whether these kinds of recordings should be publicly available and under what circumstances is a question of public policy to be determined by the public policy makers, not the courts. The Michigan Court Rule, which gives local courts discretion to make choices regarding access to and copying of court recordings, is a valid exercise of the Michigan Supreme Court's policy making authority as is the exercise of discretion of the chief judge of each court in adopting their local policy. The District Court properly analyzed the facts as alleged by Appellant and correctly held that such a right is not guaranteed by the Constitution.

Appellant did not argue below that the issue could not be resolved on the pleadings and the District Court did not decide the issue. This Court should not address this issue.

The District Court should be affirmed.

## ARGUMENT

### A. Standard of Review.

A district court's dismissal under Fed. R. Civ. P. 12(b)(6) is reviewed de novo. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. The District Court Properly Considered this Rule 12 Motion.

Appellant now argues the District Court should not have decided this matter under Fed. R. Civ. P. 12(b)(6). But Appellant never raised that issue below and the District Court did not decide it.

This Court has repeatedly held it does not review matters not decided by the lower court. *E.g., Kilnapp v. City of Cleveland*, 167 F.4th 909, 928 (6th Cir. 2026) ("Because the district court did not reach the issue, we decline to address it in the first instance."); *Perez v. Aetna Life Ins Co*, 150 F.3d 550, 554 (6th Cir. 1998) (same). It should decline to do so here.

In addition, Appellant fails to cite any case for the proposition that discovery is necessary to decide whether a constitutional right exists based on the allegations in the complaint, i.e., a claim has been stated. To the contrary, Fed. R. Civ. P. 8(a)(2) requires a plaintiff to "state a claim for relief" providing "a short and plain statement of the claim showing that the pleader is entitled to relief." It was Appellant's obligation to address the elements of *Press-Enterprise II*. Moreover, the cases which address the issue in this case have all proceeded by motion. *E.g., Richmond*

8

*Newspapers, Inc v Virginia*, 448 U.S. 555, 560 (1980) ("appellants sought a hearing on a motion to vacate the closure order"); *Press-Enterprise Co v. Superior Court*, 464 U.S. 501, 503 (1984) ("petitioner, Press-Enterprise Co., moved that the voir dire be open to the public"); *Press-Enterprise Co v Superior Court*, 478 U.S. 1, 5 (1986) ("the State moved in Superior Court to have the transcript of the preliminary hearing released to the public").

## C. Access and Copying is Not Supported by "Experience" and "Logic."

Appellant argues that the right to in-person attendance under *Globe Newspapers v. Superior Court,* 457 U.S. 596 (1982) should extend to access to and copying of audio and video recordings of court proceedings. But the Supreme Court – or any court as far as Appellees can tell -- has never held such a right exists. Time and again, the courts have declined to stretch the First Amendment in that way.

The starting point is this Court's decision in *Stevens v. Michigan State Court Administrative Office*, 2022 WL 3500193 (6th Cir. Aug. 18, 2022). In that case, this Court ultimately affirmed dismissal because the plaintiff had not addressed the "experience and logic" test of *Press-Enterprise II.* But, before reaching that conclusion, this Court discussed both the same Michigan court rule at issue in this case and the result of its own research. Regarding the court rule, MCR 8.119(H)(8)(b), this Court acknowledged that Michigan trial courts have discretion to "decide whether to let litigants access audio and video recordings of proceedings."

9

*Id* at *1.  As to the historical record, the Court stated:

> [W]e have found no case establishing the historical availability of audio recordings of court proceedings when a party can attend a trial, receive a transcript, and request the right to record the proceedings themselves. We are not the only court to come back empty-handed in this regard. *See Commonwealth v. Winfield*, 464 Mass. 672, 985 N.E.2d 86, 91 (Mass. 2013).

*Id* at *6.

This Court concluded that because plaintiff had failed to provide a sufficient historical record, "we leave the [experience and logic] analysis for another day and a fuller record." *Id*. Such a record should not be resolved in the "abstract but rather may 'follow the principle of party presentation' and 'decide a case based on the historical record compiled by the parties.'" *Id*. (citations omitted).

Just as in *Stevens*, Appellant in this case has failed to provide such a record. A review of the Complaint shows she did nothing more than allege the underlying facts of her attempts to obtain the recordings, R.1, Page ID #8-21, ¶¶19-49, described her failed advocacy efforts to change public policy, R.1, Page ID #22-25, ¶¶50-59, then argued that access to and copying of recordings is good public policy, R.1, Page ID #26-33, ¶¶60-72.  There is no reference to history or experience.

Nor did she provide meaningful examples of historical analogues to recordings in her response to Appellees' motion.  She provided a lengthy discussion of the undisputed but irrelevant proposition that the Constitution guarantees personal

presence in the courtroom.  Plaintiff's Response to Defendants' Motion to Dismiss, R.18, Page ID # 247-250, at 9-12.  She then argued, as a point of history, that in the time of the Norman Conquest, historical England and colonial America, it was common for citizens to attend trials but it is now "no longer plausible or customary for people to regularly attend court in person to observe court proceeding in person." R.18, Page ID # 249-250, at 10-12. But common sense and ordinary experience show the contrary is true.  Any casual observer of history clearly understands that getting in a car and driving to a climate-controlled modern courthouse in the 21st century is much easier and more comfortable than, as she argues, in a cold or hot courtroom in centuries past, either by walking or perhaps riding a horse.

She then failed to take the advice of this Court and instead argued in the abstract:  the citizenry is no longer well informed because many "Americans have zero or one local paper." *Id*. at 13.  But the concrete facts are that metro Detroit has many newspapers and television websites, including the Detroit News, the Detroit Free Press, the Oakland Press, Macomb Daily, The Michigan Chronicle, the Jewish News, Detroit Metro Times and Crain's Detroit Business among others.  Appellant's own Complaint cites to both a Detroit newspaper and a Detroit television website as a source of local information regarding court proceedings and judges.  Complaint, R.1, Page ID #27, ¶62, n. 10,  R.1, Page ID #28, ¶64, n.12.

As to the logic component, Appellant fared no better.  She presented examples

11

of situations where a recording indicates the demeanor of the judge and litigants and concludes the logic component is satisfied. R.18, Page ID #253-254, 15-16.  But the Supreme Court has rejected exactly that argument for the basis of a constitutional right:

> Respondents contend that release of the tapes is required by the Sixth Amendment guarantee of a public trial.  They acknowledge that the trial at which these tapes were played was one the most publicized in history, but argue that public understanding of it remains incomplete in the absence of the ability to listen to the tapes and form judgments as to their meaning based on inflection and emphasis.  In the first instance, this argument proves too much.  The same could be said of the testimony of a live witness, yet there is no constitutional right to have such testimony recorded and broadcast.

*Nixon v. Warner Communications*, 435 U.S. 589, 610 (1978).

Appellant then argued that the transcribed record of proceedings involving racial minorities or speakers of "non-standard dialects" might be inaccurate. R.18, Page ID #254, at 16.   But Appellant is not a member of a minority group and again argues in the abstract, contrary to the admonition of *Stevens*, offering no evidence in support of her proposition.

Appellant's brief on appeal does not provide any materially different or additional historical analogues but instead punctuates the point made by Appellees in the District Court:  access to and copying of court recordings is not a constitutional matter but rather a policy choice to be made by the public policy makers.  For

12

example, Appellant recites four pages of  state rules or statutes regarding various access rules.  Appellant's Brief on Appeal at pp.18-21.  Appellees had attached a listing of all 50 state statutes or court rules to their reply brief showing the multitude of approaches based on various public policy concerns.  R. 19-1, Page ID # 315-16. Some states provide broad access, some restrict.  Some have special rules regarding proceedings involving minors.  Some have special rules when sexual conduct is involved.  All either of these lists show is that these are public policy choices not mandated by either the United States Constitution or any state constitution.

In that regard, both Congress and the Michigan Legislature have recognized there is no constitutional right of access and, if any right is to exist, it is to be created by the legislature.  For example, in 2024, Congress enacted special legislation regarding the families of victims of the bombing of Pam Am Flight 103 over Lockerbie, Scotland.  Congress recognized that there exists no constitutional right to remotely access court proceedings and it took action to legislate that right.  As a result, Congress enacted the Lockerbie Victims Access Act, Public Law 118-37, so that "victims of the 1988 bombing of Pan Am Flight 103 over Lockerbie, Scotland" could have "remote video and telephonic access to proceeding in the case…."  The statute expressly overrode Federal Rule of Criminal Procedure 53 prohibiting photography in courtrooms in criminal proceedings.  Remote access was allowed "notwithstanding any provision of the Federal Rules of Criminal Procedure or other

13

law or rule to the contrary…."  This Act was unnecessary if the First Amendment controlled.

Likewise, a bill was proposed in the United States Senate in 2023 to require access to court recordings.  The proposed "Sunshine in the Courtroom Act of 2023," introduced in the Senate, died in committee.  https://www.congress.gov/bill/118th-congress/senate-bill/833.

It was proposed again in 2025, where it again died in committee. https://www.congress.gov/bill/119th-congress/senate-bill/1133.

The same result occurred in Michigan.  In 2023, Senate Bill No. 257 of 2023, was introduced.  That bill proposed to require video recordings of all court proceedings to be publicly available:

> If a court makes a video recording of a public court proceeding, the court shall make the recording available for public access as required by this section.

R. 15-5, Page ID # 199-201.  The bill died in committee and has never been re-introduced.

## D. **The Constitutional Issue has been Rejected.**

Appellant argues extensively that her ideas about access to and copying of recordings of courtroom proceedings is a good idea.  Maybe so.  Maybe not.  That is an issue for the public policy makers.  In that regard, Appellees provide the

14

following review of the pronouncements of many courts rejecting that such a right arises from the Constitution:

- "There is a long leap, however, between a public right under the First Amendment to attend trials and a public right under the First Amendment to see a given trial televised. It is a leap that is not supported by history." *Westmoreland v. Columbia Broad. Sys. Inc*., 752 F.2d 16, 23 (2nd Cir. 1984).

- "[W]e find that there was no obstruction of the free flow of information. There were no restrictions on media access to the trial or on the publication of information in the public domain… If a right to copy the tapes and transcripts in this case exists, it must come from a source other than the Constitution." *United States v. Beckham*, 789 F.2d 401, 409 (6th Cir. 1986).

- The "First Amendment right of access to public information does not extend to the videotape of … deposition testimony… members of the public, including the press, were given access to the information contained in the videotape. Therefore, appellants received all the information to which they were entitled under the First Amendment." *United States v. McDougal*, 103 F.3d 651, 659 (8th Cir. 1996).

- "While new technology characteristic of the Information Age may call for the replotting of some boundaries, the venerable right of members of the public to attend federal court proceedings is far removed from an imagined entitlement to view court proceedings remotely on a computer screen." *In re Sony BMG Music Entertainment*, 564 F.3d 1, 9 (1st Cir. 2009).

- "We know of no case where the First Amendment right of access has been extended to include a right to an electronic recording… Nor do we see the wisdom of

15

extending the First Amendment right of access to include unofficial electronic recordings where an official transcribed record of the trial is available." *Com. v. Winfield*, 464 Mass. 672, 677-78 (2013).

- *Fisher v. King*, 232 F.3d 391, 396 (4th Cir. 2000) (holding that, under *Warner Communication*, the First Amendment provides no right of access to audio played in open court, for which a verbatim transcript was provided).

The duty to dispense justice separates the courtroom from traditional public spaces. The First Amendment is not left unchecked at the courthouse doors.

> The courtroom is a nonpublic forum, where the First Amendment rights of everyone (attorneys included) are at their constitutional nadir. In fact, the courtroom is unique even among nonpublic fora because within its confines we regularly countenance the application of even viewpoint-discriminatory restrictions on speech.

*Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) (citation omitted).

### E. This is a Public Policy, not a Constitutional, Question.

Appellant's actions on this issue admit this to be a public policy issue, not a constitutional one. Appellant has been an advocate for the release of court recordings for some time. Her attempts to change public policy have properly been addressed to the policy making bodies – the Michigan Supreme Court, the Michigan Legislature, and the Oakland County Board of Commissioners. She has also properly attempted to change public opinion or create a groundswell for change by writing opinion pieces in Michigan newspapers. Her attempts have been grounded in what she believes to be good public policy, not a constitutional right. The public

16

policy makers have not found her reasoning to be compelling and she has been unsuccessful in creating such a right. Only now – in this lawsuit -- has she claimed a constitutional right.

There are two problems with Appellant's campaign. First, all of her efforts have been rejected by Michigan's policy making bodies – the Legislature, the Supreme Court, and the Oakland County Board of Commissioners. The second problem is that there is no First Amendment right to access these recordings under *Press-Enterprise II*, 478 U.S. 1. As the District Court properly recognized, "the Court is not the proper avenue to change public policy." Order Grant. Mot. Dismiss, R. 21, at Page ID #334. The Supreme Court respects those choices:

> It is hardly this Court's place to pick and choose among competing policy arguments ... selecting whatever outcome seems to us most congenial, efficient, or fair. Our license to interpret statutes [and the Constitution] does not include the power to engage in such freewheeling judicial policymaking.

*Pereida v. Wilkinson*, 592 U.S. 224, 241 (2021).

A robust discussion through the legislative process or the Michigan Supreme Court's rule-making process on access and copying of audio and video recordings is the proper forum.

### i. Protecting Victims, Witnesses, and Jurors

Most notable among public policy issues is the concern for testifying victims. The Second Circuit acknowledged this in *Mirlis v. Greer*, 952 F.3d 51 (2d

17

Cir. 2020), where a third-party witness was video deposed about a sexual assault. When a non-party petitioned to obtain a copy of the video, the court refused, explaining:

> The astonishing and pervasive rise of the Internet; the attendant ease with which videos may be shared worldwide by individuals; and the eternal digital life with which those videos are likely endowed by even a single display online. These are all factors that multiply and intensify the privacy costs to the individual of releasing sensitive videos; those costs are undeniably greater than what they might have been 30 years ago… Common sense and over two decades of widespread and constant use of the Internet are sufficient to tell us that a video of a person describing details of his abuse is likely to garner more attention, be distributed more widely, and last longer in the public's attention than are copies of a transcript or even local news articles.

*Id*. at 66.

Other state courts are equally conscious of victims' interests. The Supreme Judicial Court of Massachusetts upheld a lower court's denial of a request to release a "room recording" (an audio recording) of a trial to filmmakers, given the risk of emotional distress to the testifying witnesses. *Winfield*, 464 Mass. at 683-84. There the court explained:

> [T]he interests of justice would not be served by giving [the film producer] access to the room recording of the testimony at trial. Where [the producer] already had the transcript of the trial, and where release of the room recording posed a material risk of emotional distress to the victim and her family…

18

*Id.*

This concern is common and justified. Those proceedings should not be on the internet to follow these victims for the rest of their lives.

The privacy and candor of other individuals participating in court proceedings, such as jurors or non-party witnesses, are clearly a concern. For example, during *voir dire* in a criminal case, one of the attorneys typically asks potential jurors if they have ever been a victim of a crime like the one charged – a fact which may never have been revealed before – yet the answer to the question is compelled by law. The subsequent reactions and answers of these non-parties should not be available to the public at the click of a button.

The courts are also well aware that jurors, victims, and witnesses are sometimes threatened for their role in a case. If a victim or witness knows a video of their testimony will be recorded for public dissemination, they may fear retribution and hesitate or refuse to testify truthfully or at all. *See United States v. Bruno*, 700 F. Supp. 2d 175, 182 (N.D.N.Y. 2010) (protecting privacy concerns "strengthens the integrity of our justice system by assuring their rights to safety and privacy"). The publication of recordings would significantly hinder the court's ability to keep "witnesses and defendants free from violence and influence." *Bradford v. Johnson*, 354 F. Supp. 1331, 1337 (E.D. Mich. 1972).

Trials in Michigan courts are sometimes broadcast by the media. Process

19

protections exist to protect jurors when this occurs. Specifically, Michigan Supreme Court Administrative Order 1989-1.2(a)(iii) prohibits coverage of jurors or jury selection. Not only does this rule protect jurors but it is also another example of a legitimate choice made by policy makers – in this case, the Michigan Supreme Court's rule making process.

### ii. Integrity of the Judicial Process

The ease of video editing with today's technology only heightens these concerns. The chance of misleading manipulation before publication is significant, and the Supreme Court saw it coming in *Warner Communications*, stating:

> [If copied, there would be no] safeguard, other than the taste of the marketing medium, against distortion through cutting, erasing, and splicing of tapes.

435 U.S. at 601. In 1978, the traditional broadcast media was at least restrained from distortion by the threat of potential liability. But in the age of name-less and face-less YouTube, Instagram, and TikTok accounts, that deterrent has lost its teeth. Once posted, this content lives forever. The judiciary is well aware of the problem:

- "Video recordings present particular concern due to the potential abuse that can arise from the possible editing of such media which could distort the original contents." *AFT Michigan v. Project Veritas*, No. CV 17-13292, 2023 WL 2890152, at *4 (E.D. Mich. Apr. 10, 2023).

- "Courts have widely recognized the increased capacity for abuse of videotapes, a concern only magnified by recent advancements in digital editing software." *Fox v. Makin*, 2024 WL 5046224, at *6 (D. Me. Dec. 9, 2024).

20

- "[I]n the last 15 years, deepfake technology has become increasingly accessible and available, and ordinary people now can generate convincing deepfake content at little cost in a matter of minutes. And with the concomitant rise of social media, deepfakes can be disseminated to millions of online users with the mere click of a button." *Kohls v. Ellison*, 2025 WL 66765, at *1 (D. Minn. Jan. 10, 2025) (citations omitted).

In this case, Appellant attended the proceedings and obtained the transcript. She has the right to "disseminate her desired message" on her "desired platforms" about what occurred. That is all the Constitution requires.

> Accordingly, there is no prohibition against Plaintiff's ability to disseminate a desired message and otherwise communicate to his desired platforms that occurred during a court proceeding, either in-person or virtual. This Court also emphasizes that Plaintiff can obtain transcripts to these proceedings at any time. These circumstances demonstrate the courtroom is not closed off to the public and does not interfere with the First Amendment's assurance of a free and open society.

*Somberg v. Cooper*, 582 F. Supp. 3d 438, 446 (E.D. Mich. 2022).[3]

Appellant attempts to distort her demand as just seeking copies of two recorded court hearings for political purposes. But that is not the claim she alleged. Instead, Appellant seeks to invalidate and enjoin the local administrative orders, R.

---

[3] Mr. Somberg challenged the state court rule prohibiting recording of court proceedings. This Court later held that Mr. Somberg did not have standing to pursue the claim, 117 F.4th 375 (2024), but did not otherwise disturb the District Court's analysis.

1, Page ID #36-37, and, by implication, the Michigan Supreme Court rule authorizing them. In addition, she admits she would edit the recordings before publishing them on the internet for political purposes.  Regardless of her intentions, such distortions would undermine the public trust and confidence in the judicial process.

## REQUESTED RELIEF

The District Court should be affirmed.

**GIARMARCO, MULLINS & HORTON, P.C.**

By: /s/ William H. Horton
      **WILLIAM H. HORTON** (P31567)
      **JOHN R. FLEMING** (P79748)
      Attorney for Defendants
      101 West Big Beaver Road, Tenth Floor
      Troy, Michigan 48084-5280
      (248) 457-7000
      bhorton@gmhlaw.com

Date: June 10, 2026

## LOCAL RULE CERTIFICATION

I, William H. Horton, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch

(for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

/s/ William H. Horton
WILLIAM H. HORTON (P31567)

## CERTIFICATE OF SERVICE

On June 10, 2026, I certify that I electronically filed this document with the Clerk of the Court through the ECF System, which will send notice of such electronic filing to all counsel of record registered electronically

/s/ William H. Horton
WILLIAM H. HORTON (P31567)
Attorney for Defendants
bhorton@gmhlaw.com

23

**No. 25-2166**

In the
**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

SAMANTHA HALLMAN,

    *Plaintiff-Appellant*,


TRAVIS REEDS, *et al.*,

    *Defendants-Appellees*.

**On Appeal from the United States District Court
for the Eastern District of Michigan, Southern Division
Case No. 25-10939- Honorable Brandy R. McMillion**

_____

**ADDENDUM REGARDING APPELLEES' BRIEF ON APPEAL**

_____

William H. Horton (P31567)
John R. Fleming (P79748)
GIARMARCO, MULLINS & HORTON, P.C.
Tenth Floor Columbia Center
101 West Big Beaver Road
Troy, Michigan 48084-5280
(248) 457-7000

*Attorneys for Defendant/Appellee County of Oakland*

24

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| RECORD | DESCRIPTION | PAGE ID |
|---|---|---|
| R.1 | Complaint | 8-21; 11-17; 20-23; 25; 26-33; 34; 36-37 |
| R.1-3 | Complaint- Email from District Court Administrator | 59-61 |
| R. 1-4 | Complaint- Email from Oakland Circuit Court Denying Request to Edit | 63 |
| R-15-4 | Defendants' Motion to Dismiss- Local Administrative Order of Sixth Circuit Court | 193-197 |
| R-15-5 | Defendants' Motion to Dismiss-Senate Bill No. 257 of 2023 | 199-201 |
| R.18 | Plaintiff's Response to Defendants' Motion to Dismiss | 247-250; 254; |
| R. 19-1 | Plaintiff's Reply Brief | 315-16 |
| R-21 | Order Granting Motion to Dismiss | 334 |

I certify that the documents in the Addendum are properly part of the record.

/s/William H. Horton
WILLIAM H. HORTON
Attorney for Defendant-Appellant

Dated: June 10, 2026

**CERTIFICATE OF SERVICE**

On June 10, 2026, I certify that I electronically filed this document with the Clerk of the Court through the CM/ECF System, which will send notice of such electronic filing to all counsel of record. I certify that all participants in the case are registered electronically and are CM/ECF System users, and service will be effected

25

by the CM/ECF System.

GIARMARCO, MULLINS & HORTON, PC

By: /s/William H. Horton
WILLIAM H. HORTON (P31567)
Attorney for Defendant-Appellant
101 West Big Beaver Road, Tenth Floor
Troy, Michigan 48084-5280
(248) 457-7000
E-Mail:  bhorton@gmhlaw.com

## LOCAL RULE CERTIFICATION

I, William H. Horton, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

/s/ William H. Horton
WILLIAM H. HORTON (P31567)

## CERTIFICATE OF SERVICE

On June 10, 2026, I certify that I electronically filed this document with the Clerk of the Court through the ECF System, which will send notice of such electronic

26

filing to all counsel of record registered electronically

/s/ William H. Horton
WILLIAM H. HORTON (P31567)
Attorney for Defendants
bhorton@gmhlaw.com

27