**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

Samantha Hallman
  *Plaintiff-Appellant*,

  v.

Travis Reeds, et al.,        **CASE NO. 25-2166**

  *Defendants-Appellees*.

On Appeal from the United States District Court for the
Eastern District of Michigan, Case No. 2:25-cv-10939

**REPLY BRIEF OF APPELLANT SAMANTHA HALLMAN**

> */s/ Sara Coulter*
> Sara Coulter (#0096793)
> *First Amendment Fellow*
> sara.coulter@case.edu
> */s/ Andrew Geronimo*
> Andrew Geronimo (#0086630)
> *Director & Supervising Attorney*
> andrew.geronimo@case.edu
> DR. FRANK STANTON FIRST AMENDMENT CLINIC
> MILTON AND CHARLOTTE KRAMER LAW CLINIC
> CASE WESTERN RESERVE UNIVERSITY
> SCHOOL OF LAW
> 11075 East Blvd.
> Cleveland, Ohio 44106
> P: (216)-368-6855 F: (216)-368-2086
> *Attorneys for Appellant Samantha Hallman*

# **TABLE OF CONTENTS**

I.    Appellees' position leaves litigants in a "Catch 22" position unable to further develop the *Press Enterprise II* "experience" and "logic" prongs at a Rule 12 stage......................................................................................3

II.   Hallman plausibly alleged that public access to the recordings at issue is supported by both experience and logic. ..............................................6

III.  Distribution of audio and video recordings of court proceedings would aid, not harm, public trust and confidence in the judiciary. ...10

IV.   Conclusion ........................................................................................13

i

# TABLE OF AUTHORITIES

**Cases**

*AFT Michigan v. Project Veritas*, No. CV 17-13292, 2023WL 2890152 (E.D. Mich. Apr. 10, 2023) ...................................................................................12

*Com. v. Winfield*, 464 Mass. 672 (2013) ........................................................ 8, 9, 10

*Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002)...............................14

*Fox v. Makin*, 2024 WL 5046224 (D. Me. Dec. 9, 2024) .....................................12

*In re Search of Fair Fin.*, 692 F.3d 424 (6th Cir.2012) .........................................14

*Kohls v. Ellison*, 2025 WL 66765 (D. Minn. Jan. 10, 2025) ................................12

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ..........................................12

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) ...............................6

*Press-Enterprise Co v. Superior Court of California*, 478 U.S. 1 (1986) ........ 3, 5, 7

*Stevens v. Michigan State Court Adm. Office*, 2022 WL 3500193 (6th Cir. Aug. 18, 2022) ....................................................................................... 2, 3, 4, 5

*United States v. Alvarez*, 567 U.S. 709 (2012)......................................................13

*United States v. Antar*, 38 F.3d 1348 (3d Cir. 1994) ............................................14

*United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986) ...................................7, 8

*United States v. Criden*, 648 F.2d 814 (3d Cir. 1981)...........................................15

*United States v. DeJournett*, 817 F.3d 479 (6th Cir. 2016)....................................14

**Other Authorities**

Carey, C.J., *Message on the Recording of Criminal Trials*, June 21, 2017 .............9

**Rules**

Fed. R. Civ. P. 12............................................................................................1, 5

Fed. R. Civ. P. 8...............................................................................................5

## Brief in Support

This case concerns the scope of the public's right of access to recordings already created by courts which document judicial proceedings, and, crucially, whether litigants have an opportunity to present an adequate record to show that the First Amendment attaches to those materials. The District Court misapplied the Fed. R. Civ. P. 12 standard and required Appellant to demonstrate this record at the pleading stage.

Appellant Samantha Hallman has an extensive record of advocating for judicial transparency and accountability. *See* Compl., R. 1, Page ID ##22-25, ¶¶50-57. While the need for such advocacy efforts may have been brought to her attention via her brother's experience in the Michigan courts—and the frequency with which such experiences occur, based on her research, *see* Compl. R. 1, Page ID #13, ¶28—her advocacy is by no means limited to his case. Instead, in an effort to encourage the public to advocate for greater judicial transparency and accountability, Dr. Hallman sought to publicize what many in the legal community described as a

1

pattern of abuse[1], including the use of taxpayer dollars to create recordings that were then restricted from dissemination via District Court policies.

As Appellees point out, Dr. Hallman's efforts have included advocacy before the Michigan Supreme Court, the Michigan Legislature, and the Oakland County Board of Commissioners, among others. Corrected Brief of Appellees, Doc. 26, Page ID #23. But she should not be faulted for attempting to exhaust administrative remedies before filing this lawsuit, nor should that fact preclude her from obtaining the Constitutional relief she seeks. This Court is the proper avenue for this change. In fact, this Court has noted that it is, in fact, equipped to answer this question given the right circumstances: "Unfortunately, the parties have compiled no such record on which we can decide this case. […] Instead of conducting an amateur historical inquiry, <u>we leave the analysis for another day and a fuller record</u>." *Stevens v. Michigan State Court Adm. Office*, 2022 WL 3500193, *6 (6th Cir. Aug. 18, 2022) (emphasis added).

---

[1] This is further corroborated by former Judge Ryan's assertion that the other "22 judges" are "still going to back me." Appellant's Brief on Appeal, Doc. 13, Page ID #10. While Appellees correctly point out that she was an Oakland County Probate Court Judge, it is notable that there are only 4 Probate Judges, https://www.oakgov.com/government/courts/probate-court/judges and her reference was broader than that.

2

The District Court's dismissal (and Appellees' arguments) would leave litigants invoking their First Amendment right of access in an untenable position of being required to demonstrate a record sufficient to meet the "logic" and "experience" prongs of *Press-Enterprise Co v. Superior Court of California*, 478 U.S. 1 (1986) (*Press-Enterprise II*)—but without the ability to further develop such a record in support of allegations in a complaint. Hallman's Complaint alleged that access to the recordings at issue were supported by "historical analogs" (Compl., R. 1, Page ID #33, ¶74) and that the public would benefit from access (Compl., R. 1, Page ID ##26-30, ¶¶60-66), and the District Court erred by requiring additional evidence in support of her allegations in the context of a Motion to Dismiss. Contrary to Appellees' arguments, allowing the parties to more fully develop the record in this way is entirely consistent with this Court's decision in *Stevens v. Michigan State Court Administrative Office*, 2022 WL 3500193 (6th Cir. Aug. 18, 2022).

I. **Appellees' position leaves litigants in a "Catch 22" position unable to further develop the *Press Enterprise II* "experience" and "logic" prongs at a Rule 12 stage.**

Appellees argue that Dr. Hallman has failed to provide a sufficient historical record, "[j]ust as in *Stevens*," Corrected Brief of Appellees, Doc.

3

26, Page ID #17, a position with which Dr. Hallman disagrees. Nonetheless, to the extent this court requires further development of the record, such a position leaves her unable to develop such a record at a Rule 12 stage—and it mistakes this Court's decision in *Stevens*. The Sixth Circuit in *Stevens* did not foreclose a future litigant—such as Dr. Hallman—from ever being able to demonstrate that access to and copying of court records is within the sweeping protection of the First Amendment. *Stevens* merely acknowledged that the litigant in that case had not done so. There, the parties in *Stevens* "[u]nfortunately…compiled no such record on which we can decide this case," including assisting the Court in "evaluating whether a process has 'historically been open to the press and general public'" which "requires a consideration of relevant history" for the experience prong. *Stevens*, 2022 WL 3500193, *6. Same for the logic prong: "[w]e similarly cannot fully assess the logic prong on this briefing, because Appellants have provided no relevant argument on this point either." *Id.*

However, the lack of developed record in *Stevens* does not mean that no litigant could ever meet such a threshold. There, the Court went on to acknowledge, in line with Appellant's arguments, that "[o]ne could imagine an argument that furnishing audio recordings, in addition to the

4

forms of access already made available, could play a 'significant positive role' in these types of court proceedings." *Id*. The Sixth Circuit specifically discussed the benefits of audio recordings over transcripts, stating, "audio recordings could reveal the demeanor of a judge or party, adding valuable context to a 'sterile paper record'" and that recordings "could also reveal errors in the transcript," *id.*— arguments that Appellant raised in her Complaint. *See* Compl., R. 1, Page ID ##1-2, ¶1. While acknowledging that multiple forms of access existed, the Court concluded by saying, "Appellants' failure to 'frame the issues for decision' thus makes it difficult for us to decide between these two positions." *Stevens*, 2022 WL 3500193 at *6.

Here, Hallman has taken steps to "frame the issues for decision" and thus provided enough to meet the *Press Enterprise II* "logic" and "experience" prongs at this early stage to show that she has stated a claim. *See, e.g.*, Compl., R. 1, Page ID ##33-35, ¶73-79. To hold that she must put forth more than that, at the Motion to Dismiss phase and before being able to conduct discovery on her claims, belies the "short and plain statement" required by Fed. R. Civ. P. 8(a)(1), misapplies Fed. R. Civ. P. 12, and hamstrings litigants.

II.   **Hallman plausibly alleged that public access to the recordings at issue is supported by both experience and logic.**

Appellees contend that the First Amendment right to access and copy recordings is not supported by caselaw, but the cases they cite provide a much more nuanced approach to the question. Corrected Brief of Appellees, Doc. 26, Page ID ##21-23. For example, Appellees rely on *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978). In that case, broadcasters petitioned for access to tape recordings that had been played to a jury and the public, and for which transcripts had been made. The Court noted the interests raised by respondents in that case:

> On respondents' side of the scales is the incremental gain in public understanding of an immensely important historical occurrence that arguably would flow from the release of aural copies of these tapes, a gain said to be not inconsequential despite the already widespread dissemination of printed transcripts. Also on respondents' side is the presumption— however gauged—in favor of public access to judicial records.

*Warner Communications, Inc.*, 435 U.S. at 602. Despite the persuasive interests, the Supreme Court noted the presence of "an additional, unique element" in that case: the public had an *alternative means of access* to the tapes via the Presidential Recordings and Materials Preservation Act. Ultimately, "[b]ecause of this congressionally prescribed avenue of public

6

access we need not weigh the parties' competing arguments as though the District Court were the only potential source of information regarding these historical materials. The presence of an alternative means of public access tips the scales in favor of denying release." *Warner Communications, Inc.*, 435 U.S. at 605–06. Here, no such alternative means of public access outside of the courts exists. Additionally, *Warner Communications* concerned recordings made outside of the courtroom and played to the jury. Here, the information Appellant seeks is created and maintained by the Court on court-specific recording software purchased with public money.

Similarly, although Appellees cite to *United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986) for their assertion that the Sixth Circuit rejects the Constitutional right to access and copy recordings, s*ee* Corrected Brief of Appellees, Doc. 26, Page ID #22, the Sixth Circuit in *Beckham*, decided prior to *Press-Enterprise II*, took a more nuanced approach. Like *Warner Communications*, that case also concerned tape recordings that had been admitted as evidence in a trial, and not recordings created and maintained by the Court. And, in *Beckham*, that detail was particularly salient: "under the local rules of court, the district court does not take custody of trial

exhibits, and the parties are responsible for their own exhibits." *Beckham*, 789 F.2d at 405. The Sixth Circuit further articulated its position that a court must still *balance a multitude of factors* when a request for recordings is made – not a general presumption against a First Amendment right of access to recordings when transcripts are available:

> We find that, when the right to inspect and copy judicial records is equivalent to the right to learn the facts on record, the fundamental right to know is at stake, and consequently, the trial court's discretion must be narrowly restricted. However, when the right to make copies of tapes played in open court is essentially a request for a duplicate of information already made available to the public and the media, then the district court has far more discretion in **balancing the factors**. We do not believe a fundamental right is implicated as long as there is full access to the information and full freedom to publish.

*Id*. at 414–15 (emphasis added). As Justice Contie noted in dissent, "[t]he courts have recognized that there is a strong presumption that material introduced into evidence at trial should be made reasonably accessible in a manner suitable for copying and broader dissemination, and that generally the right to copy has been considered correlative to the right to inspect." *Id*. at 419 (Contie, J., dissenting) (inner quotations deleted) (citing cases).

Like the prior two cases, *Com. v. Winfield*, 464 Mass. 672 (2013) falls short of supporting Appellees' broad assertions. Key to *Winfield's* holding

is the fact that the requested recording there was a backup recording the court reporter created of her own volition to supplement the official record she was concurrently making, and not a recording that the court itself had made.  "Neither a stenotypist nor a voice writer is obliged to make a room recording of court proceedings, but the court reporter in this case chose to do so, apparently to serve as a backup to her voice recording and to ensure the accuracy of her transcript," the Court noted. *Winfield*, 464 Mass. at 676. "The transcript she prepared, not the room recording, was the official record of the trial, and the room recording was kept in her custody, not placed in the court file." *Id*. Unlike in *Winfield*, the recording here was not an extra, unofficial backup recording, but one created and maintained by the court itself. Further supporting this distinction and the First Amendment implications is that when the Supreme Judicial Court of Massachusetts replaced official court reporters with court-created electronic audio recordings in 2017, they explicitly outlined a policy addressing the public's right of access to copies of these audio recordings, noting that they "can be provided promptly to parties, attorneys, the public, and assigned transcribers." Carey, C.J., *Message on the Recording of Criminal Trials*, June 21, 2017. *See* Appellant's Brief on Appeal, Doc. 13, Page

9

ID ##26-27. Finally, the public policy rationales from *Winfield* advanced by Appellees do not apply here, where *Winfield* involved "extraordinary facts" concerning the rape, assault, and battery of a child. *Winfield*, 464 Mass. at 683.

### III. Distribution of audio and video recordings of court proceedings would aid, not harm, public trust and confidence in the judiciary.

Appellees raise concerns about the integrity of the judicial process should copies of audio and video recordings of court proceedings be readily available to the public, but these fears are unavailing and do not justify restrictions upon speech. In their brief, Appellees present a parade of horribles should Appellant's First Amendment rights be recognized, noting that "jurors, victims, and witnesses are sometimes threatened for their role in a case." Corrected Brief of Appellees, Doc. 26, Page ID #26. This ignores the fact that other states and some courts in Michigan readily provide these without these problems occurring. Furthermore, as Appellees themselves point out, the policies already allow members of the public to *view* proceedings—Dr. Hallman received a link which expired in 72 hours to view the video recording of the hearing on the motion to quash, and was permitted to view video recordings of Oakland Circuit Court

10

judges who were up for reelection in a room at the courthouse. *See* Corrected Brief of Appellees, Doc. 26, Page ID ##10-11. Discovery would permit Dr. Hallman to explore whether these policies are narrowly tailored to protect trial participants, or what alternatives exist so that First Amendment-protected speech is not restricted.

Appellees fault Appellant for "admit[ting] that she would edit the recordings before publishing them on the internet for political purposes." Corrected Brief of Appellees, Doc. 26, Page ID #29. But that misstates Dr. Hallman's purpose. Here, Dr. Hallman seeks to use court videos for educational purposes, and is a civically engaged litigant in the politics of judicial elections and judicial accountability. *See e.g.,* Compl., R. 1, Page ID ##4-5, 13, ¶¶8, 28. Initially, "Dr. Hallman hoped to publish the recording online and share it with her contacts to force a public reckoning that might cause another candidate to run against Judge Asadoorian during her next election, which was scheduled for 2024." Compl., R. 1, Page ID #15, ¶34. In her request, Dr. Hallman was upfront about making alterations to the video to protect her brother's identity and truncate the video only to the relevant parts. Compl., R. 1, Page ID ##17-18, ¶¶41-42. She sought to educate the public, not mislead. But the First Amendment applies

11

regardless of her motivation for seeking public access to these records. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 298 (1964) (Goldberg, J. concurring) ("The prized American right to speak one's mind…about public officials and affairs needs breathing space to survive…The right should not depend upon a probing by the jury of the motivation of the citizen or press.") (cleaned up).

Contrary to Appellees' argument, copying and dissemination of courtroom audio and video would heighten the integrity of the judicial process, not harm it. The cases Appellees cite are inapplicable here. For example, both *AFT Michigan v. Project Veritas*, No. CV 17-13292, 2023WL 2890152 (E.D. Mich. Apr. 10, 2023) and *Fox v. Makin*, 2024 WL 5046224 (D. Me. Dec. 9, 2024) concerned the more deferential standard for discovery, specifically protective orders or confidentiality designations for videotaped depositions. In each case, there was a high likelihood of misuse of the video or past misuse of similar videos. And *Kohls v. Ellison*, 2025 WL 66765 (D. Minn. Jan. 10, 2025) denied a preliminary injunction seeking the enjoinment of a Minnesota statute preventing the dissemination of political "deepfakes."

12

Similarly, transcripts may be "edited" in the same way as videos—

people may release only certain pages. But that concern does not mean that

transcripts are kept out of the public in the same way that the concern

shouldn't be a justification for First Amendment restrictions on the

distribution of audio or video recordings. "The remedy for speech that is

false is speech that is true. This is the ordinary course in a free society. The

response to the unreasoned is the rational; to the uninformed, the

enlightened; to the straightout lie, the simple truth." *United States v.*

*Alvarez*, 567 U.S. 709, 727 (2012). The better alternative to concerns about

editing videos is more widespread distribution of the video in its entirety.

Public distribution would aid, not harm, public trust and confidence in the

judiciary and foster public access and accountability. That is not to mention

the plethora of significant positive roles beyond that provided by

transcripts to the public that Dr. Hallman has already identified. *See*

Appellant's Brief on Appeal, Doc. 13 at Page ID ##33-41.

## IV.   Conclusion

At the most basic level, this case is about public access to judicial

documents that document public proceedings. This Court has recognized

that the public has the constitutional right to access records in criminal

proceedings.  See, e.g., *United States v. DeJournett*, 817 F.3d 479, 484 (6th Cir. 2016) (First Amendment grants a right of access to plea agreements); *see also In re Search of Fair Fin.*, 692 F.3d 424, 429 (6th Cir.2012) ("This right is not limited to the trial itself but can apply to other criminal proceedings and records."). This Court has also recognized that a written transcript of a proceeding cannot substitute for the right to attend because of the "…difference between a one-dimensional transcript and an opportunity to see and hear testimony as it unfolds …" *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 711 (6th Cir. 2002). As the United States Court of Appeals for the Third Circuit recognized in the context of a voir dire transcript,

> Access to the documentation of an open proceeding, then, facilitates the openness of the proceeding itself by assuring the broadest dissemination. It would be an odd result indeed were we to declare that our courtrooms must be open, but that transcripts of the proceedings occurring there may be closed, for what exists of the right of access if it extends only to those who can squeeze through the door?

*United States v. Antar*, 38 F.3d 1348, 1360 (3d Cir. 1994). This is especially true because public access to these kinds of records greatly benefits the public:

> The public's opportunity to observe the trial proceeding, secured by Richmond Newspapers, is subject to certain practical limitations, and can be taken advantage of only by

14

those persons who have the available time and means to be present. Thus, the public forum values emphasized in that case can be fully vindicated only if the opportunity for personal observation is extended to persons other than those few who can manage to attend the trial in person.

*United States v. Criden*, 648 F.2d 814, 822 (3d Cir. 1981). As alleged in Dr. Hallman's Complaint, this logic extends with particular force to judicially created recordings of public proceedings at issue in this case.

Appellant respectfully requests that this Court reverse the District Court's decision and hold that the First Amendment right of qualified access attaches to a court's recordings of its proceedings. In the alternative, Appellant requests that this Court remand with instructions to permit the parties to build and test that record.

Respectfully submitted,

*/s/ Sara Coulter*
Sara Coulter (#0096793)
*First Amendment Fellow*
sara.coulter@case.edu

*/s/ Andrew Geronimo*
Andrew Geronimo
(#0086630)
*Director & Supervising Attorney*
andrew.geronimo@case.edu

DR. FRANK STANTON FIRST AMENDMENT CLINIC
MILTON AND CHARLOTTE KRAMER LAW CLINIC
CASE WESTERN RESERVE UNIVERSITY SCHOOL OF LAW
11075 East Blvd.
Cleveland, Ohio 44106
P: (216)-368-6855 F: (216)-368-2086
*Attorneys for Appellant Samantha Hallman*

15

## Certificate of Compliance

I, Sara Coulter, certify that this document complies with Local Rule

5.1(a) including: double-spaced (except quoted materials and footnotes); at

least one-inch margins on the top, sides, and bottom; consecutive page

numbering, and type size of all text and footnotes is no smaller than 10 1/2

characters per inch (for non-proportional fonts) or 14 point (for

proportional fonts). I also certify that it does not exceed 15 pages, pursuant

to Fed. R. App. P. 32's page limitation.

*/s/ Sara Coulter*
Sara Coulter (#0096793)


## Certificate of Service

The undersigned certifies that on July 1, 2026, I submitted this *Reply*

*Brief of Appellant Samantha Hallman* to the Court via the Court's ECF filing

system, and it will be served on all counsel via ECF.

*/s/ Sara Coulter*
Sara Coulter (#0096793)
*Attorney for Appellant Samantha Hallman*

## Addendum

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RECORD | DESCRIPTION | PAGE ID |
|--------|-------------|---------|
| R.1 | Complaint | 1-2; 4-5; 13; 15; 17-18; 22-25; 26-30; 33; 33-35. |